**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

WESTERN SLOPE INVESTMENTS – TWO RIVERS, LLC,

    Plaintiff,

  -v-

RGW ASSOCIATES, INC. d/b/a TWO RIVERS WINERY,

    Defendant.

---

**COMPLAINT**

---

Plaintiff Western Slope Investments – Two Rivers, LLC ("WSI"), for its Complaint against Defendants RGW Associates, Inc. d/b/a Two Rivers Winery ("RGW"), alleges the following:

**PARTIES, JURISDICTION AND VENUE**

1.    WSI is a limited liability company organized under the laws of Ohio, with its principal place of business located in Cincinnati, Ohio. The members and managers of WSI are the following individuals who are residents of the listed states:

| Member | State of Residence |
| --- | --- |
| Paul Schirmer | Ohio |
| Timothy Baird | Ohio |
| Jack Benitez | Illinois |
| Chris Marshall | Michigan |
| Peter Hill | Ohio |

| Member | State of Residence |
|---|---|
| Jeffrey K. Meuer | Ohio |
| Peter Craft | Ohio |

2.  RGW is a corporation organized under the laws of Texas, with its principal place of business located at 2087 Broadway, Grand Junction, Colorado. Upon information and belief, RGW owns and operates Two Rivers Winery & Chateau ("Two Rivers") which, as the name implies, is a winery offering eight different wines for public sale as well as public accommodations including ten guest suites.

3.  Upon information and belief, Defendants Robert G. Witham and Billie G. Witham (individually "Robert" and "Billie", collectively "the Withams") are individuals and residents of Mesa County, Grand Junction, Colorado. The Withams are the shareholders of RGW.

4.  This Court has subject matter jurisdiction to adjudicate the claims for relief set forth herein under the provisions of 28 U.S.C. §1332. The amount in controversy exceeds $75,000, exclusive of interest and costs and there is diversity of citizenship between WSI and RGW.

5.  This Court has personal jurisdiction over RGW as it is subject to personal jurisdiction in Colorado under Colorado's long arm statute, C.R.S. §13-1-124(1), in that this action arises from a business transacted by RGW in Colorado in connection with Colorado real property in which WSI claims an ownership interest.

6.  Venue is proper in this district under the provisions of 28 U.S.C. §1391.

**GENERAL ALLEGATIONS**

7.  On December 26, 2024, Commercial Development Services Group LLC ("CDSG") and RGW entered into a Purchase Agreement wherein CDSG would purchase, and RGW would sell, the Two Rivers winery and real property consisting of approximately 14.16 acres, all

buildings, fixtures and other equipment and improvements located at 2087 Broadway, Grand Junction, Mesa County, Colorado, Tax Parcel No. 2947-221-41-002 ("the Property"). A copy of the Purchase Agreement is attached hereto as **Exhibit 1**.

8. CDSG is a limited liability company organized under the laws of Delaware, with its principal place of business located in Cincinnati, Ohio. CDSG is a commercial real property developer.

9. In addition to the sale of the Property, the Purchase Agreement provided that all tangible and intangible personal property required to operate the business on the Property, including intellectual and proprietary property, would be transferred from RGW to CDSG.

10. The aggregate price for Property and tangible and intangible personal property pursuant to the original Purchase Agreement was Three Million Four Hundred Ninety Thousand Dollars ($3,490,000.00).

11. CDSG previously deposited Forty-Five Thousand Dollars ($45,000.00) toward the purchase of the Property into the Escrow Account of Land Title Company ("Land Title Company"), 2545 Patterson Road, Suite 100, Grand Junction, Colorado, 81505.

12. As part of the Purchase Agreement, RGW was to finance One Million Dollars ($1,000,000.00) of the Purchase Price pursuant to a "Seller Note", without any requirement for a Deed of Trust or other security.

13. In the Purchase Agreement, RGW certified to CDSG in part that there were no pending orders, ordinances, or resolutions that have been enacted or adopted authorizing any work or improvements to be made for which the Property might be assessed.

14. Further, as part of CDSG's conditions, RGW affirmed that it would not breach any affirmative covenant contained in the Purchase Agreement on or prior to closing.

15. On January 8, 2025, in order to address the removal of a restrictive covenant that was recorded against the Property, CDSG and RGW executed the First Amendment to the Purchase Agreement ("First Amendment") which, other than revising some dates in Sections 4 and 5 of the original Purchase Agreement, did not further materially alter any other terms contained therein. A copy of the First Amendment is attached hereto as **Exhibit 2**.

16. On January 16, 2025, CDSG and RGW executed the Second Amendment to the Purchase Agreement ("Second Amendment") which further revised Sections 1,3, 4, 5 and 6 of the original Purchase Agreement and provided a new closing date of February 17, 2025 in the event of removal or satisfactory modification, at CDSG's sole discretion, of the Restrictive Covenant Contingency as provided in the original Purchase Agreement. A copy of the Second Amendment is attached hereto as **Exhibit 3**.

17. On February 17, 2025, CDSG and RGW executed the Third Amendment to the Purchase Agreement ("Third Amendment") which continued to revise the Purchase Agreement by, among other things, moving the closing date to March 31, 2025, increasing the Purchase Price to $3,525,000, releasing the $45,000.00 earnest money deposit to RGW and requiring additional earnest money deposit in the amount of $10,000.00 be deposited with Land Title Company (which was paid by CDSG). A copy of the Third Amendment is attached hereto as **Exhibit 4**.

18. Thereafter, CDSG assigned all of its rights, title and interest in the Purchase Agreement to WSI on or about March 25, 2025. A copy of the Assignment of Purchase Agreement is attached as **Exhibit 5**.

19. Subsequent to the execution, yet prior to the newly agreed closing date, CDSG and WSI became aware of the following issues, which would prevent a timely closing:

 a. RGW demanded an economic consideration on a Deed of Trust for the "Seller

Financing" (which Deed of Trust was not required by the Purchase Agreement) and refused to subordinate the Seller financing to the third party financing WSI intended to use to fund the purchase of the Property. These demands and requests resulted in a delay for WSI to complete the financing intended to fund the purchase of the Property..

b. CDSG and WSI became aware that water service to the Property was to be terminated by the Ute Water Conservancy District requiring separate service to the winery and the other buildings, including those buildings to be used for public accommodations. RGW knew of this proposed termination and refused to come to an agreement with CDSG or WSI as to who was to pay for the required separate service lines/water taps.

c. RGW failed to provide the walk-through of the Property pre-closing (WSI requested the walk-through via RGW's agent) to determine that all tangible property per Exhibit B to the Purchase Agreement is still on the Property. RGW failed to provide a list of the personal property items to be transferred to WSI or any opportunity for WSI to review and approve the same as required under the terms of the Purchase Agreement.

d. RGW failed to provide a bill of sale and assignment and assumption agreement, which are required prior to Closing pursuant to the Purchase Agreement until immediately prior to closing which prevented WSI from having an opportunity to review and approve the same. The documents were inadequate, incomplete and not commercially reasonable, making it impossible for WSI and CDSG to complete the Closing process.

e. RGW failed to provide an up to date profit and loss statement as required under the Purchase Agreement.

f. RGW failed to provide an adequate or appropriate lease or post-sale occupancy

5

      agreement which would permit RGW to package and sell wine in process at the Property as RGW indicated that it needed to utilize the Property post-closing, which was an accommodation by WSI to RGW. Instead, RGW provided a wholly inadequate one-page document a few hours before the end of business on the March 31, 2025, closing date; that document, besides being commercially dilatory did not address the typical purchaser/seller protections for liability, license and permit requirements and insurance. The Purchase Agreement does not contemplate any such post-closing use of the Property by RGW.

  g. Land Title Company (selected by RGW to serve as the title company for the contemplated transaction) failed to execute WSI's standard escrow closing instructions, necessary before WSI could wire the necessary funds, and based upon information and belief, RGW's legal counsel advised Land Title Company not to execute such escrow closing instructions.

20. WSI was ready, willing, and able to close on the purchase of the Property by the March 31, 2025 closing date, but for RGW's material breaches and nonperformance of the Purchase Agreement.

21. Upon information and belief, RGW received at least two (2) other offers to purchase the Property from other parties after RGW and CDSG entered into the Purchase Agreement.

22. Upon information and belief, the subsequent offers were in an amount in excess of the purchase price contained in the Purchase Agreement and did not require any seller financing.

23. Upon information and belief, RGW intentionally and materially breached the terms of the Purchase Agreement, or failed to perform, in order to void the Purchase Agreement with

6

WSI or CDSG and allow it to enter into a more lucrative contract with other parties for the purchase of the Property.

## FIRST CLAIM FOR RELIEF
(Breach of Contract)

24.     WSI incorporates Paragraphs 1 through 23.

25.     The Purchase Agreement is a valid and existing contract for the sale and purchase of the Two Rivers Property.

26.     CDSG and WSI performed, and WSI was/is prepared to perform all of Purchaser's obligations under the Purchase Agreement at or by closing.

27.     RGW failed to perform or purposely prevented performance by WSI under the terms of the Purchase Agreement.

28.     Paragraph 9 of the Purchase Agreement provides in part that "[i]f Seller defaults in the performance of this Agreement or commits any breach of its obligations hereunder, Purchaser shall have the right to either terminate this Agreement and receive a refund of the Deposit, . . . or to require specific performance of this Agreement by Seller."

29.     As a result of RGW's breaches of the Purchase Agreement, WSI has been damaged in an amount in excess of $75,000.00, the exact amount to be proven at trial, which can only be mitigated by specific performance by RGW.

## SECOND CLAIM FOR RELIEF
(Breach of the Covenant of Good Faith and Fair Dealing)

30.     WSI incorporates Paragraphs 1 through 29.

31.     The Purchase Agreement contains an implied duty of good faith and fair dealing by the parties to the Purchase Agreement.

32. WSI and CDSG had a justifiable expectation that RGW would act in a reasonable manner in its performance of its obligations under the Purchase Agreement.

33. WSI is informed and believes and thereon alleges that RGW failed to provide a the walk-through of the Property pre-closing in order to determine that the tangible property per Exhibit B to the Purchase Agreement is still on the Property; failed to provide the personal property items to be transferred to WSI; or delayed providing the list that it failed to provide an adequate or appropriate lease or post-sale occupancy agreement which would permit RGW to finish wine, package and sell wine in process at the Property and other required closing documents; and that it would instruct and or provide the necessary information for the title company to execute CDSG/WSI's escrow closing instructions which were necessary before WSI could wire the necessary funds; and required a first priority deed of trust and an increase in monetary consideration in exchange for a subordination, all in contraction of the terms of the Purchase Agreement.

34. WSI is informed and believes and thereon alleges that RGW used its discretion that was conferred upon it under the Purchase Agreement to act dishonestly and/or to act outside of accepted commercial practices so as to deprive WSI of the benefit of the Purchase Agreement and accordingly materially breached the Purchase Agreement and WSI has been damaged.

### THIRD CLAIM FOR RELIEF
(Declaratory Judgment)

35. WSI incorporates Paragraphs 1-34.

36. WSI contends and RGW disputes that RGW is in breach of the Purchase Agreement due to its failure to close on the purchase of the Property.

37. WSI requests a declaratory judgment from the Court determining, among other things, that:

    a. The Purchase Agreement is a valid and binding contract;

    b. RGW breached the Purchase Agreement by its failure to perform its obligations under the terms of the Purchase Agreement; and

    c. That WSI is entitled to specific performance and damages.

38. WSI requests the Court conduct a "speedy hearing of a declaratory-judgment action." *See* Fed. Civ.R. 57 and 28 U.S.C. § 2201.

WHEREFORE, Plaintiff Western Slope Investments – Two Rivers, LLC ("WSI") demands judgment enter in its favor against Defendant RGW Associates, Inc. ("RGW") as follows:

I. That WSI be awarded an amount in excess of $75,000.00 against RGW exclusive of interest, costs and fees, the exact amount to be proven at trial;

II. That, in the alternative, WSI requests this Court to Order RGW to perform its obligations under the Purchase Agreement on the precise terms of that Agreement and sell and convey the Property to WSI, as damages are inadequate to compensate WSI as the non-breaching party;

III. That the Court enter a declaratory judgment that the Purchase Agreement is a valid and binding contract and that RGW breached the Purchase Agreement due to its failure to close on the purchase of the Property;

IV. That WSI recover its costs and interest incurred in pursuing this action; and

V. For such other further relief, both legal and equitable, that this Court deems appropriate.

                                                SENN VISCIANO CANGES P.C.

By: *s/ Mark D. Gruskin*
     Mark D. Gruskin
     Charles E. Fuller
     Travis K. Riley
     1700 Lincoln St., Suite 2100
     Denver, Colorado 80203
     303-298-1122
     mgruskin@sennlaw.com
     cfuller@sennlaw.com
     triley@sennlaw.com

     Attorneys for Plaintiff